WALLIS, Appellant, vs. FIRST NATIONAL BANK OF RACINE and others, Respondents.

SAME, Respondent, vs. SAME, Appellants.

*October 10, 1913—January 13, 1914.*

*Contracts: Construction: Intent of parties: Conveyances of land: Rights reserved and acquired: Easements: Common stairway: Rebuilding: Alterations: Party walls: Rights of owners: Repairs: Increasing height.*

1. To aid in determining the intention of the parties to a contract, when that is doubtful, the contract may be read in the light

of the circumstances which surrounded the parties when it was made.

2. Express enumeration, in contracts embracing mutual conveyances of land or interests therein, of the rights reserved and acquired by the parties raises a fair implication that such enumeration covers all rights intended to be reserved or acquired.

3. Under certain agreements embracing mutual conveyances between defendant's grantor and plaintiff's grantors, who then owned adjoining parcels of land, one of such agreements having been made at the time, and the other twenty-three years after, defendant's grantor built a party wall upon, and inclosed in her two-story building, a narrow strip of the parcel belonging to plaintiff's grantors, it is *held* that the only rights which plaintiff's grantors retained (and which he acquired) in that part of said strip not covered by the party wall were an easement to use the stairway in said building, adjoining the party wall, for all purposes of access to and egress from any building which might thereafter be erected on their land, the right to pierce the party wall for that purpose, and the right to have the stairway maintained at all times in good condition and repair.

4. No new building having been erected on plaintiff's parcel to which such right of access and egress would apply, defendant had the right, in reconstructing its building, to remove the old stairway and replace it with a new and better one, and also to make it one foot lower, it not appearing that such changes would in any way injure plaintiff.

5. Defendant had the right, also, to remove and replace with better material the facing of the front end of the party wall, if such change would not injure plaintiff, and the right to repair or replace the adjoining front wall of its building, so long as plaintiff was not thereby deprived of the use of the stairway.

6. Defendant might also increase the height of the party wall twenty-eight inches, the wall being of sufficient strength.

7. It is *not held* that if defendant should add more stories to its building plaintiff would not have the right to have stairways built over the present one to reach such upper stories, and the right to pierce the party wall to reach such stairways.

8. The owner of property subject to an easement has the right to make incidental changes in the real estate over which the easement extends, or to make beneficial use of the same, provided there is no substantial impairment of the right granted.

9. The owner of an undivided half of a party wall and of the land on which it stands has a right to repair the wall when neces-

sary and a right to raise the height of the wall, it being of sufficient strength, without the consent and even against the protest of the other owner, if those things can be done without injury to the latter.

APPEALS from a judgment of the municipal court of Racine county: WM. SMIEDING, JR., Judge. *Affirmed on plaintiff's appeal; reversed on that of defendants.*

In 1885 one Catherine Schulver owned the north forty feet of lot 5 of block 26 of the city of Racine, and her two children, Albert and Annie Huse, owned the south twenty feet of said lot. Mrs. Schulver was either building or contemplating the erection of a building on the portion of the lot owned by her. The Huses and Mrs. Schulver entered into a contract by the terms of which the Huses conveyed to Mrs. Schulver an undivided one-half interest in a strip of land located in the northeast corner of the portion of lot 5 owned by them, two and one-half feet in width from north to south and twenty-nine and one-half feet in length from east to west, and adjacent to the portion of lot 5 owned by Mrs. Schulver. This strip will hereafter be referred to as the two and one-half foot strip. In consideration for such conveyance, Mrs. Schulver conveyed to the Huses an undivided one-half interest in and to a certain wall then being built by her, as well as a like interest in the land on which the wall stood. The wall was described as the south wall of a building then being built by Mrs. Schulver on the lot aforesaid and adjoining lands owned by the Huses, and the contract recited that it was the intention of the parties that such wall should be a party wall. It was further agreed that the contract carried with it the right on the part of the Huses to pierce said wall at such place or places as might be necessary for the purpose of providing "means of exit or egress out of or to any building" which the Huses might thereafter erect or cause to be erected on their portion of said lot 5.

Mrs. Schulver erected what is described as a two-story

green stone front building on her parcel in 1885, such building also covering the two and one-half foot strip in which the Huses conveyed her a half interest. At the time such building was erected there was a small building on the Huses' portion of lot 5, which still remained there when this action was brought. No new building has been built thereon and there has been no occasion for the Huses or their grantees to pierce the wall erected by Mrs. Schulver.

In 1908 the Huses and Mrs. Schulver, conceiving that the agreement of 1885 did not clearly express the intention in the minds of the parties when it was made, entered into a second agreement defining the rights and interests of the parties. This agreement recited that Mrs. Schulver did not intend to convey an undivided one-half interest in the land on which the wall on the south side of her lot was erected, but only a half interest in the wall itself, and the owners of the Huse interest reconveyed to Mrs. Schulver the interest in the fee of the land on which the wall on her south boundary line stood. This portion of the contract probably was not intended to apply to so much of the wall as stood on the south and west sides of the two and one-half foot strip. Mrs. Schulver on her part granted and conveyed to the owners of the Huse interests in lot 5, their heirs and assigns, "the right, privilege, and easement to use the stairway constructed by said party of the first part [Mrs. Schulver], and now existing, in her two-story brick and stone building heretofore erected by her," and now standing on the two and one-half foot strip and the part of lot 5 owned by Mrs. Schulver. The stairway is described as being of the width of fifty-four inches between walls. The right of occupancy of the stairway is granted for all purposes of access to and egress from any building which may be hereafter erected on the adjoining parcel of land, together with the right to pierce the wall erected on the south line of said strip at such place or places as may be necessary for the purpose of pro-

viding access to or egress from such new building. Mrs.
Schulver further covenanted to maintain the stairway at all
times in good condition and repair at her own expense, and
it was agreed that such undertaking should constitute a
covenant running with the land. The contract then recited:

"And said parties of the second part [the owners of the
Huse interest], in consideration of the premises and for
value received, do hereby grant, bargain, sell and convey
unto the said party of the first part all their right, title and
interest in and to the fee of the land adjoining the south
boundary line of the parcel first herein described, upon
which stands the brick wall of the said building of the party
of the first part, reserving only the undivided interest con-
veyed by said deed of August 13, 1885, in the wall itself and
the right and privilege to use the same for all purposes of a
party wall, in connection with the parcel last above de-
scribed, adjoining said building on the south."

It is contended, and perhaps correctly, that the paragraph
above quoted has no reference to the two and one-half foot
strip, but only to the wall along the boundary line between
the two parcels of land to the west of such strip.

At the time this action was commenced, the defendant the
*First National Bank of Racine* had become the owner of the
rights and interest of Mrs. Schulver in lot 5, and the plaint-
iff, *Wallis,* had become the owner of the Huse interests in
said lot. Before action was begun the bank had let a con-
tract for the erection of a new building on the property ac-
quired from Mrs. Schulver. The plans did not contemplate
the destruction of the south wall except the tearing down of
the facing on the front thereof and its replacement with
granite so as to make it harmonize with the remaining por-
tion of the front of the new building. The plans did con-
template the raising of the party wall about twenty-eight
inches and the tearing out of the old stairway and its re-
placement by another of the same width built of concrete
and marble. The height of the floor of the second story of

the new building was to be one foot less than the height of the second floor of the old one, so that the proposed new stairway would be one foot lower than the old one, although it would have the same number of steps. The landing of the new stairway would extend substantially as close to the rear of the twenty-nine and one-half foot strip as did the old stairway. The bank proposed to use a part of the space over the front part of the stairway for a part of an office room on the second floor. Such use had been made of such space in the original building since its erection in 1885.

The plaintiff brought this action to restrain the defendant bank from (1) raising or interfering with the party wall; (2) tearing out the face of such wall; (3) interfering in any manner with the stairway in the original structure; (4) appropriating any portion of the two and one-half foot strip to its use, to the exclusion of the plaintiff. A temporary injunction was granted restraining the doing of the acts and things complained of. On motion of the defendant bank, *Louis* and *Robert Nelson,* the parties who had the contract for the construction of the building, were brought in as parties defendant. There is practically no dispute about the facts.

As conclusions of law, among other things, the trial court found: (1) That the defendant had no right to raise the party wall; (2) that the defendant had no right to inclose the two and one-half foot strip in the added height to which it proposed to construct the new building, the south wall of which was intended to be twenty-eight inches higher than the south wall of the old building; (3) that defendant did have the right to replace the stairway with a new one of the same dimensions and height and in the same location and having its landing in the same place as the old stairway, provided the new stairway was equal to or greater than the old stairway in strength and durability; (4) that the wall on the south side of the two and one-half foot strip was a

party wall; and (5) that the parties were tenants in common in the two and one-half foot strip.

The effect of the findings and judgment was to adjudicate that the defendant had the right to remove the facing of the old wall in front of the two and one-half foot strip and replace the same with other material at least equally as good, and that Mrs. Schulver had the right to use so much of the two and one-half foot strip that was inclosed as was not subject to use for stairway purposes.

Judgment was entered in accordance with the conclusions of law, and the defendants appeal therefrom. The plaintiff appeals from so much of said judgment as adjudges that the injunction "should not be construed or extended as to preclude defendants from replacing the present stairs and stairway with a new stairway of such materials as defendants may select of equal or greater strength and durability; said stairway to be of the same dimensions and size and in the same location and position and at the same height, and that, excepting as herein modified, the preliminary injunction secured by the plaintiff in this action be dissolved."

For the plaintiff there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles,* of counsel, and oral argument by *W. C. Quarles.* They contended, *inter alia,* that the plaintiff was the owner in fee of an undivided one-half of the two and one-half foot strip, and defendants could make no changes in that portion of the building without his consent, even though it inflicted little or no damage upon him. *Allegheny Nat. Bank v. Reighard,* 204 Pa. St. 391, 54 Atl. 268; *Haslett v. Shepherd,* 85 Mich. 165, 48 N. W. 533; *Robbins v. Archer,* 147 Iowa, 743, 126 N. W. 936; *Alexander Smith & Sons C. Co. v. Ball,* 143 App. Div. 83, 127 N. Y. Supp. 974; *Kavanaugh v. St. Louis T. Co.* 127 Mo. App. 265, 105 S. W. 278; *Killion v. Kelley,* 120 Mass. 47; *Miller v. Hoeschler,* 126 Wis. 263, 105 N. W. 790.

For the defendants there were briefs by *Hand, Hand &*

*Quinn,* attorneys, and *William D. Thompson,* of counsel, and oral argument by *E. B. Hand* and *T. M. Kearney.* They argued that the rights reserved to plaintiff's grantors excluded all others by necessary implication; that the acts of the parties extending over a long period were of controlling weight in determining their rights; that a release of title or rights in real property may be implied by authority to another to do something on the land inconsistent therewith; and that the right once granted cannot be revoked so as to stop changes or improvements begun under the authority given. *Kirch v. Davies,* 55 Wis. 287, 11 N. W. 689; *Smith v. Ford,* 48 Wis. 115, 2 N. W. 134, 4 N. W. 462; *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* 110 Wis. 555, 86 N. W. 199; *Jones v. Thomas,* 120 Wis. 274, 97 N. W. 950; *Valley P. & P. Co. v. West,* 58 Wis. 599, 17 N. W. 554; *Davies v. Skinner,* 58 Wis. 638, 17 N. W. 427; *Kutz v. McCune,* 22 Wis. 628; *Dyer v. Sanford,* 9 Met. (Mass.) 395; *Elliott v. Rhett,* 5 Rich. Law (S. C.) 405; *Winter v. Brockwell,* 8 East, 308; *Liggins v. Inge,* 7 Bing. 682; *Hazelton v. Putnam,* 3 Pin. 107; *Pope v. O'Hara,* 48 N. Y. 446; *Veghte v. Raritan W. P. Co.* 19 N. J. Eq. 142; *Foot v. New Haven & N. Co.* 23 Conn. 214; *Morse v. Copeland,* 2 Gray, 302; *Addison v. Hack,* 2 Gill, 221; *Duncan v. Rodecker,* 90 Wis. 1, 62 N. W. 533. They also contended that even if plaintiff was a part owner of the two and one-half foot strip, the wall thereon was a party wall and defendant had all the rights in respect thereto and in the intervening strip which pertain to party walls, including the right to make changes, repairs, and extensions not injurious to the other party. To these propositions many authorities were cited. To the point that plaintiff's easement in the stairway did not preclude defendant from making changes and improvements in its property which did not impair the enjoyment of such easement, they cited, among other cases, *Atkins v. Bordman,* 2 Met. (Mass.) 457;

*Perry v. Snow,* 165 Mass. 23, 42 N. E. 117; *Chandler v. Goodridge,* 23 Me. 78; *Pomeroy v. Salt Co.* 37 Ohio St. 520; *Duross v. Singer,* 224 Pa. St. 573, 73 Atl. 951; *Bakeman v. Talbot,* 31 N. Y. 366; *Grafton v. Moir,* 130 N. Y. 465, 29 N. E. 974; *Low v. Streeter,* 66 N. H. 36, 20 Atl. 247, 9 L. R. A. 271; *Van O'Linda v. Lothrop,* 21 Pick. 292; Washb. Easem. & Serv. (4th ed.) 294; *Chapin v. Brown,* 15 R. I. 579, 10 Atl. 639; *Ruge v. Apalachicola O., C. & F. Co.* 25 Fla. 656, 6 South. 489; *Andrae v. Hazeltine,* 58 Wis. 395, 17 N. W. 18; *Putzel v. Drovers' & M. Nat. Bank,* 78 Md. 349, 28 Atl. 276, 22 L. R. A. 632; *Standard Bank v. Stokes,* L. R. 9 Ch. Div. 72; *Cubitt v. Porter,* 8 B. & C. 257, 2 M. & R. 267.

The following opinion was filed October 28, 1913:

Barnes, J. On the appeal of the defendants it is contended (1) the right exists on their part, without the consent of the plaintiff, to raise the height of the party wall on the south side of the two and one-half foot strip; (2) to inclose such strip to the additional height and use and occupy so much thereof as was not taken up with the stairway; (3) to remove the facing of the party wall and to substitute other material therein, provided the efficiency of the wall was in no way impaired by so doing; (4) to replace the old stairway with a new and better one; and (5) to make the height of the new stairway one foot less than the height of the old one. On all of these propositions except the third and fourth the trial court found adversely to the defendants. The plaintiff on its appeal urges that the court erred in adjudging the right to be in the defendants to build a new stairway, although they were required to build it of the same height and width as the old stairway and of at least equally good material.

The party wall on the south side of the two and one-half foot strip was substantially sixteen inches thick, so that

there was inclosed in the building built by Mrs. Schulver a part of the two and one-half foot strip about fourteen inches in width and twenty-nine and one-half feet in length, excluding end walls. The foundation wall exceeded twenty inches in thickness. The crucial question in the case is, Did the plaintiff's grantors own and does the plaintiff own an undivided one-half of all that part of the building that stands on the two and one-half foot strip? It is conceded that the parties each own a half interest in the soil itself and that it was the intention that the south wall should be a party wall. If the question be answered in the affirmative, such answer settles most of the disputed questions in plaintiff's favor, while a negative answer disposes of most of such questions in defendants' favor. The task of the court is to determine as best it may what the parties intended by their contracts of 1885 and 1908, by reading them in the light of the circumstances which surrounded the parties when they were made. *Barkhausen v. C., M. & St. P. R. Co.* 142 Wis. 292, 298, 124 N. W. 649, 125 N. W. 680; *Shepard v. Pabst,* 149 Wis. 35, 45, 135 N. W. 158. These contracts are not ordinary deeds. They were apparently made in duplicate and signed by all the parties, so that all are bound by the covenants and recitals contained therein. The small part of this fourteen-inch strip which is not used for stairway purposes can be of little value to the plaintiff, but that fact is of no consequence except as it may be helpful in getting at what the parties had in mind. If the defendants are trying to appropriate any property that belongs to the plaintiff, the fact that it may have little value to the latter can furnish no justification for taking it.

The contract of 1885 contained the following:

"And it is further understood and expressly stipulated that the above conveyance carries with it to said first parties [the Huses] the right to pierce the wall now being erected by said second party [Mrs. Schulver] on lands above con-

veyed to said second party by said first parties at such place
or places as may be necessary for the purpose of providing
means of exit or egress out of or to any building which said
first parties may hereafter erect or cause to be erected on
said adjoining lands."

It is of some significance that plaintiff's grantors state the
rights which they retain in the two and one-half foot strip,
and that nothing is said which indicates any intention to
reserve or hold any right in that portion of the building
which actually inclosed a part of such strip.

The contract of 1908 is more definite.     It recites the pur-
pose and intention the parties had in mind when the two and
one-half foot strip was conveyed, as follows:

"Whereas, it was the purpose of the conveyance of said
strip of land two and one-half by twenty-nine and one-half
feet in dimensions, to provide a common stairway for the
building then being erected by said party of the first part
and any building which might thereafter be erected on said
adjoining parcel, and to grant to the owners of said adjoin-
ing parcel the right to use said common stairway, which
purposes were not fully and clearly expressed in said con-
veyance of August 13, 1885."

It then proceeds:

"Now, therefore, in order that the rights of the parties
hereto may be more fully and clearly defined, and that the
real intention of the parties may be carried out, the said
party of the first part, in consideration of the sum of one
dollar and other valuable consideration to her in hand paid,
the receipt of which is hereby acknowledged, does hereby
grant, bargain, sell and convey unto the said parties of the
second part, their heirs and assigns, the right, privilege and
easement to use the stairway constructed by said party of
the first part, and now existing, in her two-story brick and
stone building heretofore erected by her and now standing
upon the parcel first above described and upon the said strip
two and one-half feet wide by twenty-nine and one-half feet
deep, described in said conveyance of August 13, 1885,
which stairway is of the width of fifty-four inches between

walls, for all purposes of access to and egress from any building which may hereinafter be erected upon said adjoining parcel last above described, together with the right, as defined in said former conveyance, to pierce the wall erected on the south line of said strip at such place or places as may be necessary for the purpose of providing such access or egress; and does hereby covenant and agree to and with said parties of the second part, their heirs or assigns, to maintain said stairway at all times in good condition and repair at her own expense, and this shall constitute a covenant running with the land and binding upon her heirs and assigns."

These recitals would seem to define pretty clearly the rights which the plaintiff's grantors intended to acquire and hold in the two and one-half foot strip. The purpose of conveying it was said to be to provide a common stairway and to grant the right to use it, and to carry out that purpose Mrs. Schulver granted a right to use the stairway and to pierce the party wall and agreed to keep the stairway in a proper state of repair. The building is referred to as "her" building. If the Huses owned a one-half interest in so much of the stairway as was on the two and one-half foot strip, there was no need of any grant of the right to use this part of the stairway. By expressly enumerating the rights reserved and acquired in the strip, it is a fair assumption that such enumeration was intended to and did cover all rights intended to be reserved or acquired. *Kirch v. Davies,* 55 Wis. 287, 11 N. W. 689. That portion of the fourteen-inch strip which was inclosed but not used for a stairway had been exclusively used by defendant's grantors for twenty-three years when the second contract was made, and nothing was said in the new contract to indicate that the parties did not intend that it should be so used in the future, and it was so used until the defendant bank commenced to rebuild the building. We think that under these contracts the beneficial use of the inclosed portion of the strip in question was conferred upon defendant's grantors, the plaintiff's grantors

reserving an easement in the stairway and the right to gain access thereto by making openings in the party wall. The building was originally built with the consent of all the parties, and they had a perfect right to make such provision as they saw fit regarding its ownership. It was known to all the parties when the first contract was made that Mrs. Schulver intended to build on the strip. The situation of the parties and their surroundings when the contract was made tend to indicate that what the Huses desired to secure and retain was an interest in the party wall with a right to penetrate it and the right to use the stairway and to compel Mrs. Schulver to keep it in repair.

Having reached the conclusion that plaintiff does not own any part of the stairway, but has only an easement therein, it must be also held that the defendant bank had the right to remove and replace the existing stairway with another equally as good or better and located in the same place, unless damage resulted to the plaintiff from making the change. The owner of property subject to an easement has the right to make incidental changes in the real estate over which the easement extends, provided there is no substantial impairment of the right granted. *Low v. Streeter,* 66 N. H. 36, 20 Atl. 247, 9 L. R. A. 271; *Atkins v. Bordman,* 2 Met. 457; *Van O'Linda v. Lothrop,* 21 Pick. 292; *Underwood v. Carney,* 1 Cush. 285; *Burnham v. Nevins,* 144 Mass. 88, 10 N. E. 494; *Grafton v. Moir,* 130 N. Y. 465, 29 N. E. 974; *Chandler v. Goodridge,* 23 Me. 78; *Pomeroy v. Salt Co.* 37 Ohio St. 520; *Duross v. Singer,* 224 Pa. St. 573, 73 Atl. 951. Numerous decisions in our own court relating to the rights of owners of highways over which the public have the right to travel, accord with the rule of law above stated. The owner has the right to cultivate the soil and remove crops from the part of the highway not used by the public and has the right to remove trees standing on the right of way when not necessary for road construction, and

to pile building material thereon, provided the public rights are not interfered with. A partial collection of such cases will be found under the title "Highways" in volume 2 of Simmons's Digest, page 1755. See, also, *Loberg v. Amherst,* 87 Wis. 634, 58 N. W. 1048. The plaintiff has failed to show that he would suffer any damage by reason of building the proposed new stairway or by reason of building it one foot less in height than the old one, and holding as we do that he has only an easement in the stairway, we think it follows as a necessary consequence that the defendants had the right to make the proposed change in the stairway.

Both parties agree, as we understand them, that the wall on the south side of the two and one-half foot strip was intended to be and is a party wall and that they each own an undivided moiety of the land on which it stands. This being the situation, the defendant bank had the right to raise the height of the wall against plaintiff's protest, provided it was of sufficient strength so that it could be raised without injury to plaintiff. There is an unanimity of authority on this proposition that is unusual. See note to *Bright v. Bacon* (131 Ky. 848, 116 S. W. 268) 20 L. R. A. N. s. 386, wherein about twenty cases are cited to the proposition and wherein it is said that there are no cases to the contrary. Additional cases to the same effect are *Cubitt v. Porter,* 8 B. & C. 257, 265; *Wiltshire v. Sidford,* 1 Man. & R. 404; *Campbell v. Mesier,* 4 Johns. Ch. 333. In so far as the case of *Andrae v. Haseltine,* 58 Wis. 395, 17 N. W. 18, is authority on the question at all, it tends to support the doctrine announced in the cases generally.

But it is said that, conceding the right existed to raise the party wall twenty-eight inches, the right did not exist to inclose any part of the two and one-half foot strip over and above what had been inclosed before. We have already stated the rights which we think the plaintiff's grantors intended to acquire and reserve in the building on this strip.

No limitation was placed upon the height of the building in either contract, and it was not even completed when the first contract was made.   It is possible that they did not have a keen appreciation of the value of a half interest in the fourteen-inch strip which the parties contemplated would be inclosed in the building, or else did not realize that a small part of it would be available for other than stairway purposes.   This space must necessarily be inclosed, else no roof could be placed on the building.   The right existed to raise the party wall, if it could be raised without damage to plaintiff.   We do not think it was within the contemplation of the parties or that it would be a reasonable construction of their contracts to hold that defendant is irrevocably bound for all time to come to maintain its building at its original height. If it be raised, this space must necessarily be inclosed in it, and we think plaintiff has no other or greater rights in the building as raised than he had in the structure as it was originally constructed.   He has the right to use the stairway and pierce the party wall.   His grantors have by their contracts and conduct conceded the beneficial use of so much of said strip as is inclosed and neither useful nor necessary for stairway purposes.

In reference to the tearing down of the facing of the party wall so as to construct a granite front and facing, we think the defendant was within its rights.   It had the right to repair the party wall, provided plaintiff suffered no damage. There was evidence tending to show that the repair was needed.   Such action did not even temporarily deprive plaintiff of the use of the stairway, because he could not use it until he constructed a building.   As to the part of the wall which was north of the party wall and on the east line of the two and one-half foot strip, we think it was the property of the defendant and that the defendant could repair or replace it if it saw fit, so long as such repair or replacement did not deprive the plaintiff of the use of the stairway.

To summarize the conclusions reached it is held:

1. Defendant had the right to remove the facing of the party wall and the part of the wall on the front end of the two and one-half foot strip to the north of the party wall, for the purpose of replacing it with newer and more suitable material.

2. It also had the right to remove the old stairway and to replace it with a new one of concrete and marble in conformity with its plans and to make such stairway one foot less in height than the old stairway.

3. It had the further right to raise the party wall twenty-eight inches and to inclose that part of the two and one-half foot strip lying north of the party wall and to use and occupy so much thereof as was neither necessary nor useful for stairway purposes.

4. It is held that the only interest which the plaintiff has in the portion of the building lying north of the party wall is to have a stairway maintained therein substantially like the stairway originally built and the right to pierce the party wall and use said stairway in common with the defendant at any time plaintiff erects a building on the south side of the party wall.

5. It is not intended to be held that, should defendant in the future add one or more additional stories to its building, the plaintiff would not have the right to insist that stairways be built over the present one to reach the additional stories and also the right to pierce the party wall so as to reach such stairways.

6. Neither does the court wish to be understood that conclusions 1 and 2 would have been reached had it been shown that any legal damage would result to the plaintiff therefrom or that the acts in question would constitute any material interference with the use and enjoyment of plaintiff's easement.

*By the Court.*—The judgment is affirmed on plaintiff's

appeal and reversed on the appeal of defendants, and the cause is remanded with directions to enter judgment in accordance with this opinion.

TIMLIN, J., dissents.

A motion for a rehearing was denied, with $25 costs, on January 13, 1914.